UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GENECCO PRODUCE, INC.,

                      Plaintiff,              No. 04-CV-6548 CJS

   -vs-

                                               DECISION AND ORDER

SANDIA DEPOT, INC.,

                      Defendant.
_____

APPEARANCES

For plaintiffs:          David L. Rasmussen, Esq.
                             Glenn M. Fjermedal, Esq.
                             Kevin W. Tompsett, Esq.
                             Lacy Katzen LLP
                             130 East Main Street
                             Rochester, New York 14604

For defendants:       Leonard Kreinces, Esq.
                             Kreinces & Rosenberg, P.C.
                             900 Merchants Concourse
                             Westbury, New York 11590

                             Howard E. Berger, Esq.
                             Duke, Holzman, Yaeger & Photiadis, LLP
                             1800 Main Place Tower
                             Buffalo, New York 14202

INTRODUCTION

      This is an action pursuant to the Perishable Agricultural Commodities Act of 1930 ("PACA"), 7 U.S.C. § 499a *et seq*. Plaintiff Genecco Produce, Inc. ("Plaintiff") commenced this action against defendant Sandia Depot, Inc. ("Defendant") after the United States Secretary of Agriculture ruled against plaintiff in an administrative proceeding. Now before the Court is a motion for summary judgment [#8] by defendant.

1

For the reasons that follow, the application is denied.

BACKGROUND

This action involves a dispute between the parties over payments allegedly owed for twelve separate shipments of produce. Defendant demanded payment from plaintiff, and after plaintiff refused to pay the full amount demanded, defendant filed a petition with the U.S. Secretary of Agriculture, pursuant to PACA, 7 U.S.C. § 499a. The matter came on for a hearing before an Administrative Judicial Officer, who determined that plaintiff owed defendant a total of $50,144.34, plus interest. Plaintiff subsequently commenced this action, pursuant to 7 U.S.C. § 499g(c).

Defendant filed the subject motion for summary judgment [#8], and in support of the motion, submitted the Secretary's Decision and the full administrative record. As will be discussed further below, although 7 U.S.C. § 499g(c) provides for a de novo review of the matter in the District Court, the Secretary's findings of fact are treated as prima facie evidence in this proceeding. In opposition to the motion, plaintiff submitted, *inter alia*, an affidavit from David Genecco, President of the plaintiff corporation.

The disputes over the various invoices are summarized below:

<u>Invoice 4795</u> involved the sale by Sandia to Genecco of 41,753 pounds of watermelons on an f.o.b. basis for an invoice price of $3,757.77. Genecco resold the watermelons to Michel Desjardins, a wholesaler-importer in Montreal Canada. An inspection of the shipment revealed that approximately 23% of the watermelons had defects. Desjardins agreed to pay Genecco $2,654.60 for the watermelons, but after deducting $2,248.45 for freight, inspection, dumping, and handling, Desjardins paid Genecco only $406.15. From that amount, Genecco paid Sandia $206.15, leaving an

invoice balance of $3,551.62. The Secretary found that Sandia breached its warranty of suitable shipping conditions, but nonetheless found that Sandia was entitled to the full invoice price. In this regard, the Secretary found the value of the shipment as warranted to be $1,356.30, based upon the United States Department of Agriculture's ("USDA") Market News Service report. The secretary further found that because Genecco was able to resell the produce for more than the value as warranted, Genecco suffered no damages. Genecco contends, however, that the Secretary should have determined the value as warranted based upon the invoice price of $3,551.62.

<u>Invoice 4879</u> involved the sale by Sandia to Genecco of 41,920 pounds of pumpkins, on a "price after sale" basis. Genecco paid Sandia $1,000.00 for the shipment. The Secretary determined that Genecco owed Sandia an additional $1,717.00, based upon a finding that Genecco was able to re-sell the produce for $4,802.50. After allowing Genecco 20% of this amount for profit and handling, and after deducting additional amounts for freight and inspection fees, the Secretary found that Genecco owed Sandia $1,717.00. However, Genecco's president, David Genecco, in an affidavit, contends that this finding is erroneous, since Genecco actually re-sold the pumpkins for only $1,000.00. Genecco Aff. [#18-2] ¶ 21.

<u>Invoice 4880</u> involved the sale by Sandia to Genecco of 40,760 pounds of pumpkins on a price after sale basis. Genecco paid Sandia $1,228.00 for the shipment. The Secretary determined that Genecco still owed Sandia $255.50 for the shipment. However, Genecco contends that the Secretary failed to credit Genecco $250 for dumping fees that it incurred, and that it actually owes nothing to Sandia for this shipment. Genecco Aff. [#18-2] ¶ 35.

Invoice 4881 involved the sale by Sandia to Genecco of 47,300 pounds of pumpkins, on a price after sale basis. Genecco paid Sandia $709.50 for the shipment. The Secretary determined that Genecco owed Sandia an additional $1,298.00 for the shipment. However, Genecco contends that, in calculating that figure, the Secretary incorrectly found that Genecco was able to re-sell 12 bins of pumpkins that it actually had to discard because of the poor quality of the pumpkins. Genecco Aff. [#18-2] ¶ 44.

Invoice 4884 involved the sale by Sandia to Genecco of 44,340 pounds of pumpkins on a price after sale basis. Genecco paid Sandia $886.80 for the shipment. Genecco maintains that Sandia agreed to accept this amount as payment in full, and that there is no further dispute between the parties as to this invoice.

Invoice 5392 involved the sale of 8,269 pounds of watermelons for an invoice price of $2,067.25. Invoice 5392-A involved the sale of 5,468 pounds of watermelons for an invoice price of $1,367.00. Invoice 5392-B involved the sale of 5,468 pounds of watermelons for an invoice price of $1,367.00. Although Genecco claims that the shipment was defective, the Secretary found that the inspection certificate produced by Genecco did not indicate that the entire shipment was inspected, and that Genecco had therefore not proven breach of warranty. The Secretary consequently found that Genecco owed Sandia the full invoice price of $4,801.25. However, Genecco contends that the inspection certificate in fact shows that the entire shipment was inspected and found to be defective. Genecco Aff. [18-2] ¶ 53.

Invoice 5716 involved the sale of 8,934 pounds of watermelons for an invoice price of $2,253.50. The Secretary found that Genecco owed Sandia $2,253.50 for this shipment. In this regard, the Secretary found that Genecco had failed to establish a

4

breach by Sandia, because it failed to have the produce inspected. However, Genecco contends that inspection was unnecessary, because Sandia admitted that the shipment was defective and waived inspection. Genecco Aff. [18-2] ¶ ¶ 59, 63.

Invoice 5385 involved the sale of 22,018 pounds of watermelons for an invoice price of $6,225.04. Inspection showed that 25% of the watermelons were defective. The Secretary found that Genecco owed Sandia $4,529.83 for the shipment. In calculating this figure, the Secretary found first that Sandia had breached its warranty. The Secretary then found that the only available evidence of the value of the shipment was the invoice price, which the Secretary then reduced by 25% to reflect the defects. After granting Genecco an additional allowance for inspection fees, the Secretary found that Genecco owed Sandia $4,529.83. Genecco maintains that the shipment was entirely worthless and had to be dumped. Genecco Aff. [18-2] ¶ 67. However, the Secretary found that Genecco failed to establish the necessity of dumping the entire load as required by 7 C.F.R. § 46.22.[1]

Invoice 5892 involved the sale of 40,498 pounds of watermelons for an invoice price of $8,099.60. Inspection showed that 29% of the shipment was defective. Genecco paid Sandia $1,812.65 for the shipment, leaving an invoice balance $6,883.15.The Secretary found that Genecco owed $4,874.66 for the shipment. In this regard, the Secretary found that the only available evidence of the shipment was the invoice price of $8,099.60, which the secretary then reduced by accounting for defects and inspection fees. Notably, in determining the value of the shipment, the Secretary

---

[1] 7 C.F.R. § 46.22 states, in relevant part, that "if five percent or more of a shipment is dumped, an official certificate, or other adequate evidence, shall be obtained to prove the produce was actually without commercial value, unless there is a specific agreement to the contrary between the parties."

found that Genecco had failed to submit sufficient proof of the resale value of the shipment. Genecco contends, however, that it now has sufficient proof of the resale value, which was $2,700. Genecco Aff. [#18-2] ¶ 75.

Invoice 6404 involved the sale of watermelons on a price after sale basis. Sandia contends that it sent Genecco 40,696 pounds of watermelons, while Genecco contends that the shipment was only 37,400 pounds. Inspection showed that 20% of the shipment was defective. Genecco paid Sandia $2,280.00 for the shipment. The Secretary found that Genecco failed to establish the value of the shipment by prompt resale. Consequently, the Secretary proceeded to determine the value of the shipment by referring to the USDA Market News Service, which indicated a value of $12,160.00. The Secretary deducted 20% from this amount for profit and handling, and found an amount due of $9,728.00. Taking into account Genecco's payment of $2,280,00, the Secretary found that Genecco owed Sandia an additional $7,448.00. Genecco disputes the Secretary's finding as to the resale value of the watermelons, and contends that the best evidence of such value was the actual resale amount of $2,520. Genecco Aff. [#18-2] ¶ 84.

Invoice 6434 involved the sale of 41,504 pounds of watermelons for an invoice price of $8,300.80. Genecco paid Sandia $7,480.00 for the shipment, leaving an invoice balance $820.80. The Secretary found that Genecco owed Sandia the full invoice balance of $ 820.80. However, Genecco contends that Sandia agreed to reduce the invoice price because the shipment was partially defective. Genecco Aff. [#18-2] ¶ 98.

Invoice 6437 involved the sale of 41,047 pounds of watermelons for an invoice price of $8,209.40. Genecco paid Sandia $7,064.64 for the shipment, leaving an

invoice balance $1,144.76. The Secretary found that Genecco owed Sandia $ 1,144.76 for the shipment. In this regard, the Secretary based her determination on the invoice amount. However, Genecco contends that Sandia agreed to reduce the invoice price because the shipment was partially defective. Genecco Aff. [#18-2] ¶ 106.

Invoice 6464 involved the sale of 40,738 pounds of watermelons, for an invoice price of $6,518.08. Genecco paid Sandia $5,633.40 for the shipment, leaving an invoice balance $895.68. The Secretary found that Genecco failed to establish a breach of warranty and that Sandia owed the full invoice balance of $ 895.68. However, Genecco contends that Sandia agreed that the shipment was partially defective and agreed to reduce the invoice price. Genecco Aff. [#18-2] ¶ ¶ 110, 115.

Invoice 6504 involved the sale 20,752 pounds of watermelons for an invoice price of $3,424.08. Genecco paid Sandia $3,112.80 for the shipment, leaving an invoice balance of $311.28. The Secretary found that Genecco failed to establish a breach of warranty, and that Genecco consequently owed Sandia $ 311.28 for the shipment. However, Genecco contends that the shipment was out of grade and that Sandia agreed to reduce the invoice price because the shipment was partially defective. Genecco Aff. [#18-2] ¶ ¶ 117, 119, 122.

Invoice 6552 involved the sale of 963 cartons of pineapples on an f.o.b. basis for an invoice price of $14,429.81. Genecco contends that the shipment was partially defective, and that it had to dump 38 cartons of watermelons. The Secretary found that Genecco failed to establish a breach of warranty, and that Genecco therefore owed Sandia the full invoice price of $14,429.81. As to the alleged breach, the Secretary found that the pineapples were only 8% defective on average, while the "United States

Standards for Grades of Pineapples" "allow for normal deterioration found at destination to as much as 15% for average condition defects." However, Genecco contends both that there was a breach of warranty and that Sandia agreed to a price reduction. Genecco Aff. [#18-2] ¶ ¶ 126, 131.

## ANALYSIS

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 Moore's Federal Practice, § 56.11[1][a] (Matthew Bender 3d ed.). In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim. *See, Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once that burden has been established, the burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To carry this burden, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249. Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment

8

is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993).

Plaintiff brought this action pursuant to 7 U.S.C. § 499g(c), which states, in relevant part:

> **Appeal from reparation order; proceedings**
> Either party adversely affected by the entry of a reparation order by the Secretary may, within thirty days from and after the date of such order, appeal therefrom to the district court of the United States . . . . *Such suit in the district court shall be a trial de novo and shall proceed in all respects like other civil suits for damages, except that the findings of fact and order or orders of the Secretary shall be prima-facie evidence of the facts therein stated. . . .*

7 U.S.C.A. § 499g(c) (emphasis added). All this essentially means, however, is that on a motion for summary judgment in a PACA case, the "Secretary's findings [have] conclusive effect unless effectively rebutted." *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1033 (D.C. Cir. 1988). The prima facie validity given to the Secretary's findings creates a burden of production, which the non-moving party may satisfy by setting forth "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Frito-Lay, Inc. v. Willoughby*, 863 F.2d at 1032-33.

The Uniform Commercial Code ("UCC") applies to sales of produce under PACA, "where PACA is silent as to a material part of the transaction at issue." *Tray-Wrap, Inc. v. Meyer*, No. 90 Civ. 7688 (DLC), 1994 WL 710804 at *4 (S.D.N.Y. Dec. 20, 1994), *aff'd* 71 F.3d 404 (2d Cir. 1995). It is undisputed that Genecco "accepted" all of the shipments of produce discussed herein. Accordingly, damages for any breach of warranty should be calculated pursuant to UCC Section 2-714(2), which states: "The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have

had if they had been as warranted, unless special circumstances show proximate damages of a different amount."

At the outset, although plaintiff included Invoice 4884 in its Complaint in this action, there is actually no dispute between the parties as to this invoice. Accordingly, plaintiff's claim as to Invoice 4884 is dismissed as moot.

As to the remaining invoices, defendant contends that plaintiff failed to properly oppose the summary judgment motion, because it failed to introduce any "new" evidence, and instead is merely making the same arguments that it made before the Secretary:

> The Genecco Affidavit adds nothing to what was before the Secretary. . . . In fact, much of what is set forth in the Genecco Affidavit is found in the Brief of Genecco filed with the Secretary . . . . [T]he proof of the level of damages is the same as that which Genecco tried to prove before the Secretary and is trying to prove before this Court. . . . The Secretary's findings of fact . . . have to be rebutted by documents which are different than that which was before the Secretary. We do not have any new documents presented by the Petitioner, Genecco.

*See*, Kreinces Reply Decl. ¶ ¶ 4, 6, 7. Defendant did not cite any authority in support of these assertions. Defendant, though, did cite the case of *Havana Potatoes of New York Corp. v. United States*, 136 F.3d 89, 91 (2d Cir. 1997), for the proposition that "[t]he Secretary's findings of fact . . . must be upheld on review by the district court if they are supported by substantial evidence." Def. Memo of Law p. 6. However, the Court disagrees. First, the *Havana Potatoes* holding is inapplicable to this case, since it involved a *direct appeal* of a final decision of the Secretary of Agriculture to the Second Circuit Court of Appeals, pursuant to 28 U.S.C. § 2342.[2] *See*, Appellate Brief, *Havana Potatoes of New York Corp. v. United States*, 1997 WL 33709837 at *4. It did not involve

---

[2] It is clear that the *Havana Potatoes* case is inapplicable here, since 28 U.S.C. § 2342 expressly does not apply to appeals from orders issued by the Secretary under 7 U.S.C. § 499g(a).

10

the situation that exists here, where plaintiff is entitled to a trial *de novo* in the district court pursuant to 7 U.S.C. § 499g(c).  Accordingly, the "substantial evidence" standard does not apply in this case.  Moreover, while 499g(c) provides that "the findings of fact and order or orders of the Secretary shall be prima-facie evidence of the facts therein stated," the Court finds that this requirement does not impose any limitation on the plaintiff's ability to submit evidence in this *de novo* proceeding. *See*, *Frito-Lay, Inc. v. Willoughby*, 863 F.2d at 1033 ("The Act [PACA] merely creates a rebuttable presumption. It establishes a rule of evidence and does not prevent *any defense*. It does not interpose an obstacle to the presentation of any contest on the issue nor does it take away the right of either party to introduce *any pertinent or relevant evidence*.") (emphasis added) (*citing Spano v. Western Fruit Growers*, 83 F.2d 150, 152 (10th Cir.1936).  Instead, in the context of a summary judgment motion, the prima facie effect given to the Secretary's findings seems to do nothing more than satisfy the moving party's burden of production under Rule 56:

> [F]or purposes of summary judgment, the Secretary's findings are dispositive when there is *no evidence* submitted in dispute.  This interpretation gives effect to the prima facie clause of the Act [PACA], by making the Secretary's findings conclusive unless effectively rebutted. *Once rebutted, the Court is then able to reweigh the evidence, thus giving effect to the provision for de novo review*.

*See*, *Frito-Lay, Inc. v. Willoughby*, 863 F.2d at 1033 (emphasis added; internal quotation marks omitted); *see also*, 126 A.L.R. Fed. 487 (1995-2005) ("The findings of the Secretary of Agriculture are prima facie evidence so that a person who prevails in the proceeding before the Secretary of Agriculture is entitled to summary judgment in the proceeding before the Federal District Court if the other party does not introduce

11

evidence challenging the findings of the Secretary of Agriculture."). Accordingly, the Court finds that defendant is not entitled to summary judgment merely because plaintiff relies on some or all of the same evidence here that it submitted in the administrative proceeding.

Defendant next alleges that plaintiff's response to the summary judgment fails to show the existence of triable issues of fact. The Court disagrees. For example, the Court finds that there is a triable issue of fact with regard to Invoice 4795, although not for the reason asserted by Genecco. As discussed earlier, Genecco contends that the Secretary erred by finding that the value of the shipment was $1,356.30, based upon the price reported by the Market News Service. Genecco contends that the value as warranted is actually the invoice price. *See*, Genecco Affidavit [18-2] ¶ 16. However, it was appropriate for the Secretary to use the price listed by the Market News Service in determining the value as warranted. *See*, *Pacific Tomato Growers, Ltd. v. American Banana Co., Inc.*, 60 Agric. Dec. 348, 2001 WL 1891240 at *7 ("The best method of ascertaining the value the produce would have had if it had been as warranted is to use the average price for the commodity at time and place of arrival, as shown by Market News Service Reports.") (*citing Pandol Bros., Inc. v. Prevor Mktg. Int'l, Inc.*, 49 Agric. Dec. 1193 (1990)); 1 JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE, § 10-2 (4th ed. 1995) ("The fair market value at the time of acceptance is the most appropriate measure of the value of the goods as warranted. *For goods such as commodities traded on an open market, price quotations will be available.* Of course, the purchase price of the damaged goods may be the best evidence of the value of the goods as warranted.") (emphasis added, footnotes omitted). While the contract price

may establish the value of the goods as warranted, it generally is not used where the value of the goods can be easily established using another method. *See, e.g., HCI Chemicals (USA), Inc. v. Henkel KgaA*, 966 F.2d 1018, 1024 (5th Cir. 1992) ("When fair market value cannot be easily determined, or the parties do not raise it as a measure of value, the purchase price may turn out to be strong evidence of the value of the goods as warranted.").  Here, Genecco has not offered any reason why the contract price would be a better measure of the value as warranted than the Market News Service price quote used by the Secretary.

Nonetheless, the Court finds that there are errors in the Secretary's calculation of damages under Invoice 4795.  In that regard, the Secretary stated:

> The [Market News Service] report on August 27, 2002 shows that 65-69-pound bins of red seedless watermelons originating out of Texas were selling for $20.55 per bin.  The load consisted of 41,753 pounds, or 66 bins.  Using the price of $20.55 per bin, we find that the 66 bins had a value as warranted of $1,356.30.

Secretary's Decision p. 16.  The Secretary apparently obtained the figure of 66 bins from the inspection report associated with Invoice 4795.  However, the inspection report is a fax or a photocopy that is difficult to read, and it actually appears that the number listed thereon may be 55 or 56, not 66.  More importantly, on the inspection report, a "bin" appears to consist of 807.5 pounds.$^{3}$  Clearly, something is amiss with the Secretary's calculation, since 66 bins at 65-69 pounds per bin does not come close to 41,753 pounds.  Moreover, a "65-69-pound bin" selling for $20.55 indicates a price of

---

$^{3}$The inspection report states that there were 20145.51 kilograms of watermelons, which converted into pounds, amounts to 44,413.25 pounds.  If a "bin" (the inspection report uses the term "package") equals 807.5 pounds, this amounts to 55 bins.

approximately $ .30 per pound[4], which in this case would amount to a value as warranted of over $13,000. Accordingly, the Court finds that there is an issue of fact with regard to Invoice 4795.

Similarly, David Genecco's affidavit establishes that there are material issues of fact with regard to all of the remaining invoices. With regard to Invoice 4879, there is an issue of fact as to the price for which Genecco was able to re-sell the pumpkins. With regard to Invoice 4880, there are issues of fact as to the value of the pumpkins as accepted, and as to whether Genecco incurred dumping fees. With regard to the 5392 invoices and Invoice 5716, there is an issue of fact as to breach. With regard to invoices 5385, 5892, and 6404, there are issues as to the value of the produce as accepted. Finally, with regard to invoices 6434, 6437, 6464, 6504, and 6552, there are issues as to breach and as to whether or not there was an accord and satisfaction.

## CONCLUSION

For all of the foregoing reasons, defendant's summary judgment motion [#8] is DENIED. By separate order, the Court will refer this matter to a United States Magistrate Judge who will oversee the scheduling of discovery and all other non-dispositive pretrial matters in this case.

So Ordered.

Dated: Rochester, New York
         August 19, 2005          ENTER:

                                  /s/ Charles J. Siragusa
                                  CHARLES J. SIRAGUSA
                                  United States District Judge

---

[4]The Court notes that, with regard to Invoice 6404, the Secretary consulted the Market News Service and found the watermelon price to be approximately $ .30 per pound.